George Hofmann (10005)
Patrick E. Johnson (10771)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300

Attorneys for Sorenson Media, Inc.

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>SORENSON MEDIA, INC.,<br><br>Debtor. | Bankruptcy No. 18-27740 (WTT)<br><br>Chapter 11 |

## NOTICE OF FILING
## (A) FINAL ORDER PURSUANT TO
## 11 U.S.C. SECTIONS 105, 361, 362, 363, 364, 503(b) AND 507(a), RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 4001-2 OF THE LOCAL RULES OF PRACTICE FOR THE UNITED STATES BANKRUPTCY COURT, DISTRICT OF UTAH (I) AUTHORIZING THE DEBTOR (A) TO OBTAIN POST-PETITION SECURED DIP FINANCING AND (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE PROTECTION; (II) GRANTING LIENS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF (THE "FINAL ORDER");
## AND
## (B) REDLINE OF THE FINAL ORDER

PLEASE TAKE NOTICE that on December 18, 2018, Sorenson Media, Inc. (the

"Debtor") filed its *Final Order Pursuant to 11 U.S.C. Section 105, 361, 362, 363, 364,*

*503(b) and 507(a), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy*

*Procedure and Rule 4001-2 of the Local Rules of Practice for the United States*

*Bankruptcy Court, District of Utah (I) Authorizing the Debtor (A) to Obtain Post-Petition*

*Secured DIP Financing and (B) to Use Case Collateral Pursuant to 11 U.S.C. Section*

*363 and Providing for Adequate Protection; (II) Granting Liens; (III) Modifying the*

*Automatic Stay; and (IV) Granting Related Relief* (the "<u>Final Order</u>") (Dkt. 236)

PLEASE TAKE FURTHER NOTICE that attached as Exhibit A is a redline of the

Final Order comparing the Final Order against the *Second Interim Order Pursuant to 11*

*U.S.C. Section 105, 361, 362, 363, 364, 503(b) and 507(a), Rules 2002, 4001 and 9014*

*of the Federal Rules of Bankruptcy Procedure and Rule 4001-2 of the Local Rules of*

*Practice for the United States Bankruptcy Court, District of Utah (I) Authorizing the*

*Debtor (A) to Obtain Post-Petition Secured DIP Financing and (B) to Use Case*

*Collateral Pursuant to 11 U.S.C. Section 363 and Providing for Adequate Protection; (II)*

*Granting Liens; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief.*

Dated:        December 18, 2018

COHNE KINGHORN, P.C.

/s/ Patrick E. Johnson
GEORGE HOFMANN
PATRICK E. JOHNSON
Attorneys for Debtor

# Exhibit "A"

Prepared and Submitted by:

George Hofmann (10005)
Patrick E. Johnson (10771)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300

Attorneys for Sorenson Media, Inc.

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy No. 18-27740 (WTT) |
| SORENSON MEDIA, INC., | Chapter 11 |
| Debtor. | |

**~~SECOND INTERIM~~FINAL ORDER PURSUANT TO
11 U.S.C. SECTIONS 105, 361, 362, 363, 364, 503(b) AND 507(a), RULES 2002, 4001
AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE
4001-2 OF THE LOCAL RULES OF PRACTICE FOR THE UNITED STATES
BANKRUPTCY COURT, DISTRICT OF UTAH (I) AUTHORIZING THE DEBTOR (A)
TO OBTAIN POST-PETITION SECURED DIP FINANCING AND (B) TO USE CASH
COLLATERAL PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR
ADEQUATE PROTECTION; (II) GRANTING LIENS; (III) MODIFYING THE
AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF**

{00413905.DOCX / 3}

1

THIS MATTER having come before this United States Bankruptcy Court for the District of Utah (the "Court") on December 17, 2018 (the "Final Hearing") upon the motion (the "DIP Motion") by Sorenson Media, Inc. (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Case"), seeking, among other things, entry of ~~an interim~~a final order (~~this "Interim~~the "Final Order"):

(i) Authorizing the Debtor to obtain credit and incur debt, pursuant to sections 363, 364(c) and 364(d) of the Bankruptcy Code, on ~~an interim~~a final basis for a period (the "~~Interim~~Financing Period") from the entry of ~~this~~the Interim Order in this Case through and including ~~the date of the final hearing (the "Final Hearing")~~February 15, 2019, to consider entry of ~~an order (the "~~this Final Order~~")~~ granting the relief requested in the DIP Motion on a final basis up to the aggregate committed amounts set forth in the Budget (as defined below) for ~~such period~~the Financing Period (and on terms and conditions more fully described herein), secured by, as set forth in the DIP Financing Agreement (as defined below), first priority, valid, perfected and enforceable liens (as defined in section 101(37) of chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code")) ("Liens") on all real and personal property of the Debtor's estate pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy

Code, and with priority over all other administrative expenses as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

(ii)    Authorizing the Debtor to (a) establish that financing arrangement ("DIP Facility") pursuant to (I) the terms of the First Amended and Restated Senior, Secured Debtor-in-Possession Credit Agreement (the "DIP Loan Agreement")[1], substantially in the form of **Exhibit "B"** ~~to the DIP Motion~~attached hereto, by and ~~among~~between the Debtor as borrower and JLS Holdings, LLC, as lender ("JLS"), and (II) all other agreements, documents, notes, certificates and instruments executed and/or delivered with, to, or in favor of JLS in connection with the DIP Loan Agreement, including, without limitation, the security agreements, notes, guaranties, mortgages and Uniform Commercial Code ("UCC") financing statements and all other related agreements, documents, instruments and certificates executed and/or delivered in connection therewith or related thereto (items (I) and (II), collectively, as the same may be amended, modified or supplemented and in effect from time to time, the "DIP Financing Agreement"); and (b) incur the Obligations under and as defined in the DIP Financing Agreement (collectively, the "DIP Obligations");

(iii)   Authorizing the use of the proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreement) in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) (subject to the terms and conditions of the DIP Financing Agreement) solely for (a) working capital and

---

[1]     Capitalized terms used in this ~~Interim~~ Order but not defined herein shall have the meanings ascribed to such terms in the DIP Loan Agreement.

general corporate purposes and (b) payment of costs of administration of this Case, to the extent set forth in the Budget and the DIP Financing Agreement.

(iv)     Granting to JLS pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and Liens (the "New DIP Liens"), senior and superior in priority to all other unsecured creditors of the Debtor's estate, upon and to all of the Collateral granted under the terms of the DIP Financing Agreement, which, for the avoidance of doubt, shall expressly include all real and personal property of the Debtor now owned or hereafter acquired (excluding Avoidance Actions of the Debtor, but including only the proceeds of Avoidance Actions brought pursuant to section 549 of the Bankruptcy Code to recover any post-Petition Date transfer of Collateral) and all other property of whatever kind and nature, in each case, that is pledged as collateral under any Security Document, the Financing Orders or any other order of the Bankruptcy Court in the Case, and all products, proceeds (cash and non-cash), substitutions, and accessions of or to any of the foregoing;

(v)     Authorizing the use of "cash collateral" as such term is used in section 363 of the Bankruptcy Code ("Cash Collateral"), including in which JLS has an interest, in accordance with the terms of this ~~Interim~~Final Order and the DIP Financing Agreement;

(vi)     Granting the Replacement Liens (as defined below) to JLS to the extent of any Pre-Petition Diminution in Value (as defined below) of JLS's interest in the Pre-Petition Collateral (as defined below) as adequate protection for the granting of the New DIP Liens to JLS, the use of Cash Collateral, and as a result of the imposition of the automatic stay;

(vii)    Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreement and this ~~Interim~~Final Order; and

(viii)   Waiving the fourteen (14) day stay provisions of rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the Federal Rules of Bankruptcy Procedure are referred to herein as the "Bankruptcy Rules") and providing for immediate effectiveness of this ~~Interim~~Final Order.

This Court having considered the DIP Motion, the exhibits attached thereto, the DIP Facility and the DIP Financing Agreement, and the evidence submitted at the hearing on ~~this Interim Order (the "Interim Hearing");~~the Final Order, the objections and arguments made prior to and at the hearing; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), 9014 and Rule 4001-2 of the Local Rules of Practice for the United States Bankruptcy Court, District of Utah (the "Local Rules"), due and proper notice of the DIP Motion and the Interim ~~Hearing~~and Final Hearings having been given; an Interim Hearing having been held and concluded on November 30, 2018; and it appearing that approval of the ~~interim~~final relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtor ~~pending~~during the ~~Final Hearing~~Financing Period and is otherwise fair and reasonable and in the best interests of the Debtor, its creditors, its estate and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM ~~HEARING~~AND FINAL HEARINGS, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     **Petition Date**.  On October 16, 2018 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with this Court.  The Debtor has continued in the management and operation of its business and assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

B.     **Jurisdiction and Venue**.  This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for this Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     **Committee Formation**.   A statutory committee of unsecured creditors (the "Committee") has been appointed in this Case.

D.     **Notice**.  The Interim ~~Hearing was~~and Final Hearings were held pursuant to the authorization of Bankruptcy Rules 4001 and 6003 and Local Rule 4001-2.  Notice of the Interim ~~Hearing~~and Final Hearings was provided by the Debtor on November 28, 2018 ~~and~~, notice of the emergency relief requested in the DIP Motion was provided by the Debtor on November 29, 2018, and further notice of the Final Hearing was provided on December 6, 2018, whether by telecopy, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the District of Utah, Central Division (the "U.S. Trustee"), Attn: John T. Morgan, 405 S Main Street # 300, Salt Lake City, UT 84111 (email: john.morgan@usdoj.gov); (ii) counsel for the Committee (email: eeostrow@hollandhart.com); (iii) the Internal Revenue Service and Utah State Tax Commission; (iv) the Debtors' twenty (20) largest unsecured

creditors, (v) counsel to JLS Holdings, LLC, ~~Attn: Adelaide Maudsley (email: amaudsley@kmclaw.com), Kirton McConkie, 50 E. South Temple #400, Salt Lake City, Utah 84111,~~ (vi) those parties who have filed a notice of appearance and request for service of pleadings in this Case pursuant to Bankruptcy Rule 2002.

Under the circumstances, such notice of the Interim ~~Hearing~~and Final Hearings and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and Local Rule 4001-2.

E. **Debtor's Acknowledgements and Agreements.** ~~Without prejudice~~Except as otherwise provided in Section 7 below with respect to ~~the rights of~~ other parties in interest ~~as set forth in Section 7 below~~, the Debtor (on behalf of itself and its estate) admits, stipulates and acknowledges and agrees as indicated below that (collectively, subsections E (i) through E (vi) hereof shall be referred to herein as the "Debtor's Stipulations"):

(i) **Pre-Petition Financing Agreements**. The Debtor admits, stipulates, acknowledges and agrees that prior to the Petition Date, the Debtor incurred indebtedness consisting of loans and other financial accommodations pursuant to (a) the Note Purchase Agreement dated June 7, 2018 between the Debtor and JLS; (b) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $6,750,000 dated June 7, 2018 executed and delivered by the Debtor to JLS; (c) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $2,000,000 executed and delivered by the Debtor to JLS; and (d) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $1,400,000, dated July 5, 2018, executed and delivered by the Debtor to JLS; (e) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $900,000 dated July 12, 2018 executed and delivered by the Debtor to JLS; (f) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $1,200,000 dated July 18, 2018 executed and delivered by the Debtor to JLS; (g) the Senior Secured Convertible Subordinated

Promissory Note in the principal amount of $1,300,000 dated July 24, 2018 executed and delivered by the Debtor to JLS; (h) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $400,000 dated August 1, 2018 executed and delivered by the Debtor to JLS; (i) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $280,000 dated August 9, 2018 executed and delivered by the Debtor to JLS; (j) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $1,600,000 dated August 16, 2018 executed and delivered by the Debtor to JLS; (k) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $1,900,000 dated August 22, 2018  executed and delivered by the Debtor to JLS; (l) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $1,750,000 dated September 4, 2018  executed and delivered by the Debtor to JLS; (m) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $465,000 dated September 13, 2018  executed and delivered by the Debtor to JLS; (n) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $1,480,000 dated September 19, 2018 executed and delivered by the Debtor to JLS; (o) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $300,000 dated October 3, 2018  executed and delivered by the Debtor to JLS; (p) the Senior Secured Convertible Subordinated Promissory Note in the principal amount of $263,000 dated October 15, 2018  executed and delivered by the Debtor to JLS; and (q) all other agreements, documents, notes, certificates and instruments executed and/or delivered with, to, or in favor of JLS related to any of the foregoing documents, including, without limitation, all notes, mortgages, UCC financing statements and all other related agreements, documents, certificates and instruments executed and/or delivered in connection therewith or related thereto (collectively, and as the same may be amended, modified or supplemented and in effect from time to time, the "Pre-Petition Financing Agreements").

(ii)     **Pre-Petition Secured Debt Amount.**    The Debtor admits, stipulates, acknowledges and agrees that as of October 16, 2018, the Debtor was obligated to pay JLS $21,988,000; plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations (the "Pre-Petition Secured Debt").  The Debtor admits, stipulates, acknowledges and agrees that the Pre-Petition Secured Debt owed to JLS was extended as a protective advance to maintain the Debtor's business operations while the Debtor considered and pursued various options for restructuring its business. Without the Pre-Petition Secured Debt, the Debtor would not have had sufficient available sources of working capital and financing to carry on the operation of its business or to seek to restructure the Debtor's business.

(iii)   **Pre-Petition Collateral.**   The Debtor admits, stipulates, acknowledges and agrees that to secure the Pre-Petition Secured Debt, the Debtor granted security interests and Liens (the "Pre-Petition Liens") to JLS pursuant to the Pre-Petition Financing Agreements on all or substantially all of its assets and personal property (collectively, the "Pre-Petition Collateral").

(iv)   **Pre-Petition Liens.**  The Debtor admits, stipulates, acknowledges and agrees that as of the Petition Date (i) the Pre-Petition Liens on the Pre-Petition Collateral were not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition Secured Debt constituted legal, valid and binding obligations of Debtor, enforceable in accordance with the terms of the Pre-Petition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Secured Debt existed, and no portion of the Pre-Petition Secured Debt was subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Secured Debt constituted allowable secured claims.  The Debtor admits, stipulates, acknowledges and agrees that on and as of the date that ~~this~~the Interim Order is entered, the Debtor has waived, discharged and released JLS, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtor may have (x) to challenge or object to any of the Pre-Petition Secured Debt, (y) to challenge or object to the security for the Pre-Petition Secured Debt, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Financing Agreements or otherwise.

The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Financing Agreements or the Pre-Petition Liens, and/or security interests in the Pre-Petition Collateral, or any claim of JLS pursuant to the Pre-Petition Financing Agreements.

(v)   **Value of Collateral.**   The Debtor believes that its existing assets and Collateral are more likely to be sold for a higher price if it they are sold as part of an ongoing, operating business than if they are sold piecemeal after the business is shut down and all of the current employees are terminated.

(vi)   **Cash Collateral**.  JLS has a security interest and Lien in Cash Collateral, including on all amounts on deposit in the Debtor's banking,

checking, or other deposit accounts and all proceeds of the Pre-Petition Collateral to secure the Pre-Petition Secured Debt, to the same extent and order of priority as that which was held by JLS prior to the filing of this Case.

F.    **Findings Regarding the Post-Petition Financing.**

(i)    **Need for Post-Petition Financing and Use of Collateral**.   An immediate need exists for the Debtor (A) to obtain funds from the DIP Facility in order to fund the working capital requirements and other financing needs of the Debtor, and (B) to use the Collateral, including the Cash Collateral.   The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors, its equity holders, and the possibility for a successful reorganization or sale of the Debtor's assets as a going concern or otherwise.

(ii)    **No Credit Available on More Favorable Terms**.  The Debtor has been unable to obtain (A) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (B) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, (C) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, or (D) additional post-petition liquidity or a consent to use "cash collateral" as such term is defined in section 363 of the Bankruptcy Code from or of JLS under the terms of the Pre-Petition Financing Agreements, in each case, (A) through (C) on more favorable terms and conditions than those provided in the DIP Financing Agreement and ~~this~~the Interim Order, and, in the case of (D), on terms other than those provided in the DIP Financing Agreement and this ~~Interim~~Final Order.

(iii)    **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Pre-Petition Liens are valid, senior, perfected and unavoidable.   Moreover, other than with regard to the Debtor, nothing shall prejudice the rights of any party in interest including, but not limited to, the Committee, to challenge the validity, priority, perfection and extent of any such Pre-Petition Lien, subject to the time periods set forth in Section 7 of this ~~Interim~~Final Order.

G.     **Roll-Up of Pre-Petition Secured Debt.**   JLS ~~will request~~has requested approval to irrevocably repay an amount equal to three times the aggregate advances of Post-Petition Credit in full satisfaction and cancellation of a like amount of such Pre-Petition Secured Debt from the proceeds of the DIP Facility (the "Pre-Petition Debt Payoff") upon entry of ~~the~~this Final Order, subject to the limitations and ~~upon~~conditions in section 10 below.  As used herein, "Post-Petition Credit" means the ~~expiration~~principal amount of the ~~Challenge Period, if no timely challenge is asserted. Any challenge must be made in good faith and have a reasonable basis in fact and law. However, (a) if such a challenge is made prior to the Challenge Period Termination Date, and upon entry of a final order denying such challenge in full, then~~DIP Loans advanced to the Debtor by Lender after the ~~Pre-Petition Debt Payoff would not be limited to the ratio of $1:$3, and, instead, automatically and without further Order of the Court, the entirety of JLS's pre-petition secured debt would be "rolled up" and become part of the post-petition financing and (b) if such a challenge is made prior to the Challenge Period Termination Date, and upon entry of a final order denying such challenge in part, then the Pre-~~Petition ~~Debt Payoff would not~~ be limited to the ratio of $1:$3, and, instead, automatically and without further Order of the Court, that portion of JLS's pre-petition secured debt that was not successfully challenged would be "rolled up" and become part of the post-petition financing.  The relief sought in this paragraph will be delayed until the Final Hearing on the DIP Facility.  This Court specifically does not approve such Pre-Petition Debt Payoff as part of the DIP Facility at ~~Date pursuant to Orders of this ~~time, but will consider the issue at the Final Hearing. ~~Court.

H.   **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) (subject to the terms and conditions of the DIP Financing Agreement), solely for (a) working capital and general corporate purposes, (b) payment of costs of administration of this Case, to the extent set forth in the Budget, and (c) upon entry of ~~the~~this Final Order, the Pre-Petition Debt Payoff in accordance with the DIP Financing Agreement, which shall constitute a roll-up under the DIP Financing Agreement.

I.   **Adequate Protection.**  As a result of the grant of the New DIP Liens, and the use of Cash Collateral authorized herein, JLS is entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code for any Pre-Petition Diminution in Value (as defined below) resulting from the automatic stay or Debtor's use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during this Case.  As adequate protection, JLS will receive the Replacement Liens.

J.   **Extension of Financing**.  JLS has indicated a willingness to provide financing to the Debtor in accordance with the DIP Financing Agreement and subject to (i) the entry of this ~~Interim Order and a~~ Final Order, and (ii) findings by this Court that such financing is essential to the Debtor's estate, that JLS is a good faith financier, and that JLS's claims, security interests and Liens and other protections granted pursuant to this ~~Interim Order (and the~~ Final Order~~)~~, and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this ~~Interim Order or the~~ Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

The New DIP Liens shall not be (i) subject or subordinate to (A) any Lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (B) any Liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other Lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

K.      **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility and the DIP Financing Agreement, and the fees paid and to be paid thereunder are (i) fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility and the use of the Collateral (including, without limitation, the Cash Collateral) was negotiated in good faith and at arms' length between the Debtor and JLS, and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, the consequence of which is that JLS is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

L.      **Relief Essential; Best Interest; Good Cause.**  The relief requested in the DIP Motion ~~(,~~ and as provided in this ~~Interim~~Final Order~~),~~, including, without limitation, the establishment of the DIP Facility and the use of the Collateral (including, without limitation, the Cash Collateral), is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and personal property.  It is in the best interest of the Debtor's estate to be allowed to establish the DIP Facility and to use the Collateral (including,

without limitation, the Cash Collateral) contemplated by the DIP Financing Agreement. Good cause has been shown for the relief requested in the DIP Motion (and as provided in this ~~Interim~~Final Order)~~.~~.

M.     **Entry of ~~Interim Order~~ Orders**.   For the reasons stated above, the Debtor has requested immediate entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtor and the record before this Court with respect to the DIP Motion, and with the consent of the Debtor and JLS to the form and entry of this ~~Interim~~Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**.  The DIP Motion is granted on ~~an interim~~a final basis in accordance with the terms and conditions set forth in this ~~Interim~~Final Order and the DIP Financing Agreement.

2.     **DIP Financing Agreement**.

(a)     **Approval of Entry Into DIP Financing Agreement.**   The Debtor is expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Agreement and to incur and to perform the DIP Obligations, in accordance with, and subject to, the terms of this ~~Interim~~Final Order and the DIP Financing Agreement (including, without limitation, the Budget~~), (as defined below)),~~ and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the New DIP Liens described in and provided

for by ~~this~~the Interim Order and the DIP Financing Agreement; provided, however, that the Debtor need not execute any security agreement granting JLS, in its role as lender under the DIP Financing Agreement, a senior security interest in the Pre-Petition Collateral until the entry of ~~the~~this Final Order granting such senior security interest. The Debtor is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Financing Agreement and all other DIP Financing Agreement as such become due, including, without limitation, and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Financing Agreement, which amounts shall be subject to subsequent approval of this Court after appropriate notice, opportunity to object and a hearing. Upon execution and delivery, the DIP Financing Agreement shall represent valid and binding obligations of the Debtor enforceable against the Debtor in accordance with their terms.

(b)    **Authorization to Borrow**.

(i)    In order to enable the Debtor to continue to operate its business during the ~~Interim~~Financing Period and subject to the terms and conditions of this ~~Interim~~Final Order, the DIP Financing Agreement, and the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement), the Debtor is hereby authorized to borrow under the DIP Facility, and subject to entry of ~~the~~this Final Order and the terms and conditions set forth therein, Debtor shall be authorized under the DIP Facility to consummate Pre-Petition Debt Payoff, which shall constitute a roll-up under the DIP Financing Agreement, and in doing all of the foregoing, to borrow up to a total committed amount of up to

$~~8,800,000~~10,428,108 or such larger amount as is necessary to effectuate the Pre-Petition Debt Payoff Up referenced in Section 10 below of this Order.

(ii)    Upon execution and delivery of the DIP Financing Agreement, such DIP Financing Agreement shall constitute valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor in accordance with their respective terms and the terms of this ~~Interim~~Final Order for all purposes during this Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code, or after the dismissal of this Case.  No obligation, payment, assignment or repayment thereof or recovery on or in respect thereof, transfer or grant of security under the DIP Financing Agreement, or ~~this~~the Interim Order shall be stayed, restrained, revocable, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(c)    **Application of DIP Proceeds**.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement) solely for (a) working capital and general corporate purposes, to the extent set forth in the Budget, (b) payment of costs of administration of this Case, to the extent set forth in the Budget, and (c) upon entry of

~~the~~this Final Order, the Pre-Petition Debt Payoff in accordance with the DIP Financing Agreement, which shall constitute a roll-up under the DIP Financing Agreement.

(d) **Conditions Precedent**.  JLS shall have no obligation to make any loan or advance under the DIP Financing Agreement during the ~~Interim~~Financing Period unless the conditions precedent to make such loan under the DIP Financing Agreement have been satisfied in full or waived by JLS in its sole discretion.

(e) **Liens.**  Effective immediately upon the entry of this ~~Interim~~Final Order, JLS is granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and New DIP Liens, senior and superior in priority to all unsecured creditors of the Debtor's estate, upon and to all of the Collateral, which, for the avoidance of doubt, shall include all real and personal property of the Debtor now owned or hereafter acquired (excluding Avoidance Actions of the Debtor, but including only the proceeds of Avoidance Actions brought pursuant to section 549 of the Bankruptcy Code to recover any post-Petition Date transfer of Collateral) and all other property of whatever kind and nature, in each case, that is pledged as collateral under any Security Document, the Financing Orders or any other order of the Bankruptcy Court in these Cases, and all products, proceeds (cash and non-cash), substitutions, and accessions of or to any of the foregoing, and that prior to the entry of ~~the~~this Final Order, JLS, in its role as lender under the DIP Financing Agreement, shall have a second lien security interest in the Pre-Petition Collateral (including Cash Collateral).

(f)      **DIP Lien Priority**.  The New DIP Liens created and granted to JLS, as provided herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to any of the Collateral, subject only to: (x) the Carve-Out, (y) the Permitted Liens, and (z) until entry of ~~the~~this Final Order, the liens held by JLS, in its capacity as Pre-Petition Lender, in the Pre-Petition Collateral (including Cash Collateral).  The New DIP Liens shall secure all DIP Obligations (including, but not limited to, the advances under the DIP Facility used to effectuate the Pre-Petition Debt Payoff).  The New DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in this Case except for the Permitted Liens and the Carve-Out; and shall be valid and enforceable against any trustee subsequently appointed in this Case, upon the conversion of this Case to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Case"), and/or upon the dismissal of this Case.  The New DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.  The New DIP Liens shall not be (i) subject or subordinate to (A) any Lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (B) any Liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other Lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(g)      **Enforceable Obligations**. The DIP Financing Agreement (including, without limitation, the DIP Obligations evidenced thereby) shall constitute and evidence

the valid and binding obligations of the Debtor, which obligations shall be enforceable against the Debtor, its estate and any successors thereto, and its creditors, in accordance with their terms.

(h)     **Budget**.   From and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreement ~~and~~, this ~~Interim~~Final Order, and in accordance with the Budget (defined below) (subject to the terms and conditions of the DIP Financing Agreement).

3.     **Authorization to Use Proceeds of DIP Financing Agreement**.

(a)   The Debtor shall use the DIP Loans and the Collateral (including, without limitation, the Cash Collateral) solely as provided in this ~~Interim Order and the DIP Financing Agreement, and in accordance with the Budget.  Pursuant to the terms and conditions of this Interim Order, the DIP Facility~~Final Order and the DIP Financing Agreement, and in accordance with the budget attached hereto as **Exhibit "A"** (as the same may be modified, supplemented or updated from time to time consistent with the terms of the DIP Financing Agreement and this ~~Interim Order, the "Budget"),~~Final Order, the "Budget").  Pursuant to the terms and conditions of the Interim Order, this Final Order, the DIP Facility and the DIP Financing Agreement, and in accordance with the Budget, the Debtor is authorized to use Collateral (including, without limitation, Cash Collateral) and to use the advances under the DIP Financing Agreement ~~(during the period commencing immediately after the entry of the Interim Order and terminating upon termination of the commitment to fund the DIP Facility pursuant to the provisions of this Interim Order).~~during the Financing Period.  The Budget may be updated (with

the consent and/or at the request of JLS, subject to the provisions of the DIP Financing Agreement), from time to time, provided that such updated Budget shall be in form and substance acceptable to JLS, and the Debtor shall be required always to comply with the Budget, subject to the Permitted Variances, and the DIP Financing Agreement pursuant to the terms of the DIP Facility.   Nothing in this ~~Interim~~Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business or other proceeds resulting therefrom, except as permitted pursuant to the DIP Facility, the DIP Financing Agreement and this ~~Interim~~Final Order.

(b)     Neither the advances under the DIP Financing Agreement nor any of the Collateral (including, without limitation, the Cash Collateral) may be used by the Debtor, the Committee, or any other person or entity to object to or contest in any manner, or raise any defenses to the validity, extent, perfection, priority, or enforceability of the Pre-Petition Secured Debt or any Pre-Petition Liens with respect thereto or any other rights or interests of JLS, or to assert any claims or causes of action, including, without limitation, any Avoidance Actions, against JLS.

4.     **Adequate Protection.**  As adequate protection for the interest of JLS in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the New DIP Liens, the Debtor's use of Cash Collateral and other decline in value arising out of the automatic stay or the Debtor's use, sale, depreciation, or disposition of the Pre-Petition Collateral (the "Pre-Petition Diminution in Value"), JLS shall receive adequate protection as follows:

(a)     **Replacement Liens.**  Solely to the extent of the Pre-Petition Diminution in Value of the interests of JLS in the Pre-Petition Collateral, JLS shall have, subject to the

terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the Collateral (the "Replacement Liens"), which shall be junior only to the Carve-Out as provided herein.

(b)     **Adequate Protection Upon Sale of Collateral.**   Upon the sale of any Collateral pursuant to section 363 of the Bankruptcy Code, any such Collateral shall be sold free and clear of any Permitted Liens, the Pre-Petition Liens and the Replacement Liens; *provided, however*, that such Liens shall attach to the proceeds of any such sale in the order and priority as established by final order of this Court.

5.     **Section 507(b) Reservation.**   Nothing herein shall impair or modify JLS's right to seek additional adequate protection in the event that the adequate protection provided hereunder is insufficient to compensate for the Pre-Petition Diminution in Value of the interest of JLS in the Pre-Petition Collateral during this Case or any Successor Case.

6.     **Lien Perfection**.

(a)     With respect to the New DIP Liens and the Replacement Liens approved by this ~~Interim~~Final Order, this ~~Interim~~Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the New DIP Liens and the Replacement Liens, without the necessity of filing or recording any financing statement, deed of trust, mortgage, assignment or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreements) to validate or perfect the New DIP

Liens or the Replacement Liens or to entitle the New DIP Liens or the Replacement Liens to the priorities granted herein.  Notwithstanding the foregoing, with respect to the New DIP Liens and the Replacement Liens approved by this ~~Interim~~Final Order, JLS may, in its sole discretion, file such financing statements, mortgages, security agreements, assignments, notices of Liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and with respect to the New DIP Liens, all such financing statements, mortgages, security agreements, assignments, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of entry of this ~~Interim~~Final Order.  Upon request, the Debtor shall execute and deliver to JLS all such financing statements, mortgages, notices and other documents as JLS may reasonably request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, the New DIP Liens and the Replacement Liens granted pursuant hereto.  JLS, in its discretion, may file a photocopy of this ~~Interim~~Final Order as a financing statement with any recording officer designated to file financing statements or with any county recorder or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this ~~Interim~~Final Order.

(b) This ~~Interim~~Final Order shall be sufficient and conclusive evidence that JLS shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee, as applicable, on each insurance policy maintained now or in the future by the Debtor which in any way relates to the Collateral. Notwithstanding the foregoing, the Debtor is authorized and directed to take any actions

that JLS shall request, in its sole and absolute discretion, to have JLS added as an additional insured and loss payee on each insurance policy.

7.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.** ~~Nothing~~Except as provided in Section 10 below, nothing in this ~~Interim~~Final Order or the DIP Financing Agreement, including, without limitation, the Debtor's Stipulations, shall prejudice whatever rights the Committee or any other party in interest with requisite standing, including, for the avoidance of doubt, any subsequently appointed chapter 7 and 11 trustee (other than the Debtor) may have (a) to file a contested matter or an adversary proceeding or otherwise to object to or challenge the findings herein that pertain to the Pre-Petition Secured Debt, including, but not limited to, those in relation to (i) the validity, extent, perfection, enforceability or priority of the Pre-Petition Liens in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Secured Debt, or (b) to bring suit or otherwise assert any claims or causes of action against JLS in connection with or related to the Pre-Petition Financing Agreements, or the actions or inactions of JLS arising out of or related to the Pre-Petition Financing Agreements; (collectively, a "Challenge"); *provided, however*, that, unless the Committee or any other party in interest with requisite standing commences ~~a contested matter or adversary proceeding raising~~ such ~~objection or challenge that pertains~~a Challenge to the Pre-Petition Secured Debt, including, without limitation, any claim against JLS in the nature of a setoff, counterclaim or defense to the Pre-Petition Secured Debt (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against JLS), within ~~the earlier of (a) 60~~120 days after entry of ~~the~~this

Final Order~~; or (b) 10 days before the scheduled auction sale of substantially all of the~~ ~~Debtor's assets~~ (the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period shall be referred to herein as the "Challenge Period Termination Date"), upon the Challenge Period Termination Date, (i) any and all such contested matters, adversary proceedings and other objections and challenges by any party (including, without limitation, all creditors, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in this Case or any Successor Case or in any jurisdiction, and all other parties in interest) as to the findings in this ~~Interim~~Final Order and/or the Debtor's Stipulations shall be deemed to be forever waived and barred, (ii) the Pre-Petition Secured Debt shall be deemed to be allowed in full and shall be deemed to be allowed as fully secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with this Case and any Successor Case, (iii) the Pre-Petition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected security interests and Liens, not subject to recharacterization, subordination or otherwise avoidable, and (iv) the Debtor's Stipulations shall be binding on all parties (including, without limitation, all creditors, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in this Case or in any Successor Case or in any jurisdiction, and all other parties in interest).  To the extent any such contested matter, adversary proceeding or other objection or challenge is filed, JLS shall be entitled to include such costs and

expenses, including, but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Pre-Petition Secured Debt, in each case, to the extent allowable under section 506(b) of the Bankruptcy Code.

8. **Carve-Out**. During the ~~Interim~~Financing Period and subject to the terms and conditions contained in this Section 8, the New DIP Liens, the Pre-Petition Liens, and the Replacement Liens are subordinate only to the following items (a), (b), (c) and (d) (items (a), (b), (c) and (d), collectively, the "Carve-Out"): (a) all fees required to be paid to the Clerk of the Bankruptcy Court and the Office of the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 to the extent such interest is awarded by final order of this Court; (b) to the extent allowed fees, expenses and disbursements of professionals retained by order of this Court by the Debtor and the Committee (the "Professionals") incurred (i) prior to the entry of this ~~Interim~~Final Order, and (ii) in accordance with the Budget and any previous budget approved by a prior ~~Interim Order~~interim order of this Court; and (c) up to $50,000 of allowed fees, expenses and disbursements of the Professionals (the "Professional Fee Carve-Out Cap") incurred after the occurrence of the Termination Date (defined in this paragraph below); and (d) the sum of $100,000 (the "Wind-Down Amount"); *provided, however*, that in each case (a), (b), (c) and (d), such fees and expenses are approved by this Court, or such lesser amount so approved.   To the extent not previously funded in accordance with the terms of ~~this Interim Order or~~ a prior interim order of this Court, JLS shall deposit the Carve-Out (including, without limitation, the Wind-Down Amount) into a deposit account specified by the Debtor upon the Termination Date (as defined below). For the purposes hereof, the "Termination Date" shall occur upon the earliest to occur

of: (i) the Term Loan Maturity Date (as defined in the DIP Financing Agreement); (ii) the occurrence and during the continuance of an Event of Default under the DIP Agreement; and (iii) a material breach by the Debtor of this ~~Interim~~Final Order; and, in each case, (i) through (iii) upon delivery of a written notice thereof by JLS to the Debtor and its counsel and the counsel for the Committee specifying that such notice constitutes a notice that the Termination Date has occurred (a "<u>Termination Notice</u>"). Upon the delivery of a Termination Notice, the right of the Debtor to pay professional fees incurred under clause (b) above without reduction of the Professional Fee Carve-Out Cap in clause (c) above shall terminate and upon receipt of such notice, the Debtor shall provide immediate notice by email to all retained professionals informing them that the Termination Date has occurred and that the Debtor's ability to pay professionals is subject to the Professional Fee Carve-Out Cap.   Upon the occurrence of the Termination Date and the full and final funding of the Carve-Out (including, without limitation, the Wind-Down Amount), there shall be no further obligations on the part of JLS regarding the Carve-Out (including, without limitation, the Wind-Down Amount), any Professional's fees and expenses, any U.S. Trustee Fees or any other fees and expenses of the Debtor's estate in this Case or in any Successor Case or proceedings. JLS's obligation to fund or otherwise pay the Carve-Out (including, without limitation, the Wind-Down Amount), shall be added to and made a part of the DIP Obligations, secured by the New DIP Liens, and JLS shall be entitled to all of the rights, claims Liens, priorities, and protections under ~~this~~the Interim Order, the DIP Financing Agreement, the Bankruptcy Code and/or applicable law in connection therewith. Subject to the provisions of this Section 8, the Carve-Out (including, without limitation,

the Wind-Down Amount) shall exclude any fees and expenses (x) incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (1) the DIP Obligations, (2) JLS's Liens in the Collateral, (3) the Pre-Petition Secured Debt or (4) the Pre-Petition Liens or (B) preventing, hindering or delaying, whether directly or indirectly, JLS's assertions or enforcement of its Liens, security interests or realization upon any Collateral, *provided, however*, that solely with respect to the Pre-Petition Lien in the Pre-Petition Collateral, such exclusion does not encompass any investigative work, at an aggregate expense not to exceed $20,000, conducted by the Committee's professionals prior to bringing any action relating to the foregoing, (y) related to the incurrence of indebtedness not permitted under the DIP Financing Agreement, except with JLS's express written consent or (z) arising after the conversion of this Case to a case under chapter 7 of the Bankruptcy Code.  JLS may implement reserves in accordance with the terms and conditions of the DIP Financing Agreement.  Except for a lien obligation to fund the Carve-Out (including, without limitation, the Wind-Down Amount) as set forth in this InterimFinal Order and the DIP Financing Agreement, nothing herein shall be construed to obligate JLS, in any way, to pay the Professionals' fees or U.S. Trustee Fees, or to assure that the Debtor has sufficient funds on hand to pay any Professional Fees, U.S. Trustee Fees or other liabilities or obligations of the Debtor.

       9.     **Payment of Compensation.**   Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtor, the

Committee or of any person or shall affect the right of JLS to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget.

10. **Roll-Up of Pre-Petition Secured Debt.** JLS irrevocably shall be repaid an amount equal to three times the aggregate advances of Post-Petition Credit in full satisfaction and cancellation of a like amount of its Pre-Petition Secured Debt from the proceeds of the DIP Facility (the "Pre-Petition Debt Payoff") upon entry of ~~the~~this Final Order ~~and~~. In connection with any sale of all or substantially all of the Debtor's assets, the maximum amount of any credit bid that JLS could assert in connection with any such sale, whether pursuant to 11 U.S.C §363(k) or otherwise, is limited to the DIP Obligations, constituting the sum of the Post-Petition Credit and the Pre-Petition Debt Payoff. If no timely Challenge is asserted to the Pre-Petition Secured Debt prior to the Challenge Period Termination Date, then, upon the occurrence of the Challenge Period Termination Date, ~~if no timely challenge is asserted~~automatically, and without further Order of the Court, the balance of JLS's pre-petition secured debt, constituting the difference between the Pre-Petition Secured Debt and the Pre-Petition Debt Payoff (the "Remaining Pre-Petition Secured Debt") shall be valid, perfected and allowed as a secured claim for all purposes in this case in accordance with 11 U.S.C. §506(b). Any ~~challenge~~Challenge must be made in good faith and have a reasonable basis in fact and law. ~~However, (a) if~~If such a ~~challenge~~Challenge is made prior to the Challenge Period Termination Date, ~~and~~then upon entry of a final order ~~denying such challenge in full, then the Pre-Petition Debt Payoff would~~ ~~not~~ ~~be limited to the ratio of $1:$3, and, instead, automatically and without further Order of the Court, the entirety of JLS's pre-~~

petition secured debt~~determining such Challenge, the Remaining Pre-Petition Secured Debt~~ would be ~~"rolled up"~~valid, perfected and ~~become part of the post-petition financing and (b) if such~~ allowed as a ~~challenge is made prior to the Challenge Period Termination Date, and upon entry of a final order denying~~ secured claim in this case to the extent that such ~~challenge in part, then the Pre-Petition Debt Payoff would not~~Challenge was not successful.  Any such Challenge shall be limited to the ~~ratio of $1:$3, and, instead, automatically and without further Order of~~ Remaining Pre-Petition Secured Debt.  In connection with any sale of all or substantially all of the Debtor's assets that occurs prior to the Challenge Period Termination Date, JSL shall be entitled to credit bid some or all of the Remaining Pre-Petition Secured Debt only on such terms and conditions as the Court~~, that portion of JLS's pre-petition secured debt that was not successfully challenged would be "rolled up" and become part of the post-petition financing.  The relief sought in this paragraph will be delayed until the Final Hearing on the DIP Facility.  This Court specifically does not approve such Pre-Petition Debt Payoff as part of the DIP Facility at this time, but will consider the issue at the Final Hearing~~ shall permit by subsequent order.

11.    **Collateral Rights**.  Unless JLS has provided its prior written consent or the Pre-Petition Secured Debt and all DIP Obligations have been indefeasibly paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness, if any, described in subparagraph (a) below), all commitments to lend have terminated, and all indemnity obligations under the DIP Financing Agreement have been cash secured to the reasonable satisfaction of JLS, there shall not be entered in this proceeding, or in any Successor Case, any order which authorizes any of the following:

(a)     the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to those granted to JLS; or

(b)     the use of Collateral (including, without limitation Cash Collateral) for any purpose other than to pay in full in cash the DIP Obligations or as otherwise permitted in ~~this~~the Interim Order and the DIP Financing Agreement; or

(c)     the Debtor's return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Financing Agreement.

12.     **Proceeds of Subsequent Financing.**  Without limiting the provisions and protections of Section 11 above, if at any time prior to the repayment in full of all DIP Obligations and the termination of JLS's obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any chapter 11 plan (the "Plan") with respect to the Debtor, ~~and the repayment in full of the Pre-Petition Debt,~~ the Debtor's estate, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Financing Agreement, then all of the cash proceeds derived from such credit or debt or such sale or issuance shall immediately be turned over (a) first, to JLS for application to the ~~Pre-Petition Debt pursuant to the Pre-Petition Financing Agreements; and (b) second, to JLS for application to the~~ DIP Obligations outstanding pursuant to the terms of the DIP Financing Agreement, in accordance with the terms of ~~this Interim Order.~~the Interim Order and this Final Order, and (b) second, to JLS for application to the Remaining Pre-

Petition Secured Debt pursuant to the Pre-Petition Financing Agreements and to the extent the same is an allowed, secured claim.

13. **Disposition of Collateral.**  The Debtor shall not (a) sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of JLS (and no such consent shall be implied, from any other action, inaction or acquiescence by JLS or an order of this Court), except for sales of the Debtor's services in the ordinary course of business or as permitted by the DIP Financing Agreement and this, the Interim Order, this Final Order and as approved by this Court, or (b) assume, reject or assign any leasehold interest without the prior consultation with JLS, except in each case of (a) and (b), as otherwise permitted by the DIP Financing Agreement.

14. **Remedies After Event of Default.**

(a)  The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit JLS to exercise, upon the occurrence of the Termination Date and at any time thereafter upon five (5) business days' prior notice to the Debtor, counsel to the Debtor, counsel for the Committee, and the U.S. Trustee ("Default Notice Period") of such occurrence, all rights and remedies provided for in the DIP Financing Agreement (including, without limitation and without prior notice, the right to freeze monies or balances in the Debtor's accounts or set off monies or balances of the Debtor in accounts maintained by JLS, the right to charge the Post-Default Rate, terminate commitments and cease funding under the DIP Agreement).  Notwithstanding the occurrence of the Termination Date or termination of the commitments to fund under the DIP Agreement or anything herein, all of the rights, remedies, benefits, and protections provided to JLS under the DIP Financing Agreement and this the Interim

Order shall survive.  The Debtor and/or the Committee shall be entitled to seek an expedited hearing regarding an Event of Default or termination of the commitments to fund under the DIP Agreement (a "Default Pleading"); provided, however, that the only issue to be determined at such hearing is whether an Event of Default has occurred and is continuing. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

(b)    Upon the Termination Date, all (i) DIP Obligations of the Debtor to JLS shall be immediately due and payable, and (ii) authority to use or borrow the proceeds of the DIP Financing Agreement shall cease.  If JLS exercises any of its rights and remedies upon the occurrence of the Termination Date, JLS may retain one or more agents to sell, lease, or otherwise dispose of the Collateral in accordance with the terms of the DIP Financing Agreement.  In any exercise of its rights and remedies upon the Termination Date, JLS is authorized to proceed under or pursuant to the DIP Financing Agreement.

15.    **Transaction Proceeds; Survival of Protections**. Any and all Net Cash Payments received from the consummation of an asset sale, debt issuance, or mandatory prepayment event pursuant to the DIP Financing Agreement shall be remitted directly to JLS upon Debtor's receipt thereof for application to the DIP Obligations and the unpaid Remaining Pre-Petition Secured Debt and the DIP Obligations , to the extent allowed as a valid secured claim, (in that order) in accordance with the terms of the DIP Financing Agreement and this, the Interim Order.

and this Final Order.  Unless and until the allowed Remaining Pre-Petition Secured Debt and the DIP Obligations are irrevocably repaid in full or have been cash secured to the reasonable satisfaction of JLS, all commitments under the DIP Financing Agreement to lend have irrevocably terminated, the protections afforded to JLS pursuant to this InterimFinal Order or the DIP Financing Agreement, as applicable, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting this into a Successor Case, and the New DIP Liens, shall continue in this proceeding and in any Successor Case, and such Liens shall maintain their priority as provided by this InterimFinal Order.

16.    **Modification of Automatic Stay.**  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Financing Agreement as necessary to (a) permit the Debtor to grant the New DIP Liens and the Replacement Liens and to incur all liabilities and obligations to JLS under the DIP Financing Agreement, the DIP Facility, and this InterimFinal Order, as applicable, and (b) authorize JLS to retain and apply payments hereunder.

17.    **Credit Bid.**  In accordance with the provisions of Section 10 above, JLS, directly or through a designee, shall have the unqualified right to credit bid up to the full amount, but not in excess of, the DIP Obligations, including that portion of JLS's Pre-Petition Debt that is Rolled Up intoPayoff plus the DIP Obligations in accordance with Section 10 above of this OrderPost-Petition Credit, whether as a stalking horse bidder or otherwise, in any sale of any portion of the Collateral, whether pursuant.  JLS may also credit bid the Remaining Pre-Petition Secured Debt, but only on such conditions as the Court shall fix prior to a motion, a Plan or otherwiseany such sale.

18.   **Proofs of Claim.**   JLS will not be required to file proofs of claim in this Case or a Successor Case with regard to the DIP Obligations.  This ~~Interim~~Final Order shall constitute a proof of claim on behalf of JLS in this Case with regard to the DIP Obligations.   JLS is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) aggregate proofs of claim in this Case or any Successor Case.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by JLS.

19   **Other Rights and Obligations**.

(a)   **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of ~~this Interim~~the Final Order**.  Based on the findings set forth in this ~~Interim~~Final Order, and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by ~~this Interim Order~~the same, in the event any or all of the provisions of this ~~Interim~~Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, JLS is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or Lien or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to JLS hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections granted to JLS shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, and JLS shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim.   Since the loans made pursuant to the DIP Financing

Agreement are made in reliance on this ~~Interim~~Final Order, the obligations owed to JLS

prior to the effective date of any stay, modification or vacation of this ~~Interim~~Final Order

cannot, as a result of any subsequent order in this, or in any Successor Case, be

subordinated, lose their Lien priority, or be deprived of the benefit of the status of the

Liens and claims granted to JLS under this ~~Interim~~Final Order and~~/or~~ the DIP Financing

Agreement.

(b)    **Expenses**.  As provided in the DIP Financing Agreement, all costs and

expenses of JLS in connection with the DIP Financing Agreement, whether incurred

prior to or after the commencement of this Case, including, without limitation,

reasonable and documented out-of-pocket legal, accounting, collateral examination,

monitoring and appraisal fees, financial advisory fees, fees and expenses of other

consultants, and other out of pocket expenses, will be paid by the Debtor; provided,

however, that such costs and expenses shall be paid only after each relevant

professional has provided copies of its fee and expense statements to counsel to the

Committee reasonably contemporaneously with the delivery of such fee and expense

statements to the Debtor (which may be done no more frequently than monthly).  Such

statements need not be submitted in the form of a fee application or comply with U.S.

Trustee fee guidelines, but shall contain reasonable detail as to the number of hours

worked and applicable hourly rates, but may be redacted to the extent necessary to

delete any information subject to attorney-client privilege, any information constituting

attorney work product or any other confidential information and the provision of such

invoices shall not constitute any waiver of the attorney-client privilege or any benefits of

the attorney work product doctrine.  The Committee may object to the reasonableness

of the fees, costs and expenses included in any professional fee invoice submitted hereunder, provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the party seeking reimbursement no later than ten (10) days after the objecting party receiving such applicable professional fee invoice, and (ii) it describes with particularity the items and categories of fees, costs and expenses that are subject to the objection and it provides for a specific basis for the objection to each such item of category of fees, costs and expenses; <u>provided</u>, <u>however</u>, further that the Debtor shall pay all amounts that are not subject of any objection within ten (10) days of the objection deadline.  Any hearing on an objection to any payment of any fees, costs and expenses of such professionals shall be limited to the reasonableness of the particular items or categories of fees, costs, and expenses which are the subject to such objection.  Under no circumstances shall professionals for JLS be required to comply with the U.S. Trustee fee guidelines.

(c)     **Binding Effect.**  The provisions of this ~~Interim~~Final Order shall be binding upon and inure to the benefit of JLS and the Debtor and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in this Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 cases; provided, however, that, except to the extent expressly set forth in this ~~Interim~~Final Order, JLS shall have no obligation to permit the use of the DIP Facility or the Collateral (including, without limitation, the Cash Collateral) or extend and financing to any including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor.

(d)    **No Waiver**.  The failure of JLS to seek relief or otherwise exercise its rights and remedies under the DIP Financing Agreement, the DIP Facility, the Interim Order or this ~~Interim~~Final Order, as applicable, shall not constitute a waiver of any of JLS's rights hereunder.  Notwithstanding anything herein, the entry of this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair JLS under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of JLS to (i) request conversion of this Case to a case under chapter 7, dismissal of this Case, or the appointment of a trustee in this Case, or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (iii) any of the rights, claims or privileges (whether legal, equitable or otherwise) of JLS.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(f)    **Amendment**.  The Debtor and JLS may amend, modify, supplement or waive any provision of the DIP Financing Agreement, provided that such amendment, modification, supplement or waiver, in the judgment of the Debtor and JLS, is either nonprejudicial to the rights of third parties or is not material; *provided, however,* that, the Debtor and JLS may agree (in their respective sole discretion) to extend the Maturity Date for up to 60 days without consent of the Committee.  Otherwise, such waiver, modification, or amendment of any of the provisions hereof shall be effective only if (a) set forth in writing, signed by or on behalf of the Debtor and JLS, and (b) approved by this Court.

(h)    **Survival of ~~Interim Order~~ Orders.**    The provisions of this ~~Interim~~Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in this Case, (ii) converting this Case to a cases under chapter 7 of the Bankruptcy Code, or (iii) dismissing this Case, (iv) withdrawing of the reference of this Case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of this Case in this Court, and the terms and provisions of ~~this Interim Order~~such Orders, as well as the DIP Protections granted pursuant to ~~this Interim Order~~such Orders and the DIP Financing Agreement, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by ~~this~~the Interim Order and this Final Order until all the obligations of the Debtor to JLS pursuant to the DIP Financing Agreement are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).  The DIP Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtor having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

(i)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Financing Agreement and ~~of~~ this ~~Interim~~Final Order, the provisions of this ~~Interim~~Final Order shall govern and control.

(j)    **Enforceability**.  This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the filing of the DIP Motion immediately upon execution of the DIP Financing Agreement.

Document     Page 42 of 47

(k)   **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(l)   **No Waivers or Modification of Interim Order**.  The Debtor irrevocably waives any right to seek any modification or extension of this ~~Interim~~Final Order without the prior written consent of JLS, and no such consent shall be implied by any other action, inaction or acquiescence of JLS.

(m)   **Waiver of the Fourteen (14) Day Stay Under Bankruptcy Rule 6004(h)**. The fourteen (14) day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this ~~Interim~~Final Order.

(n)   **Preservation of Rights Granted Under the Order**. No claim or lien having a priority senior to or *pari passu* with those granted by this ~~Interim~~Final Order to JLS shall be granted or allowed while any portion of the DIP Obligations remain outstanding, and the New DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or, except as set forth in this ~~Interim~~Final Order, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(1)   Unless all DIP Obligations shall have been indefeasibly paid in full in cash in accordance with the terms of the DIP Agreement (or, as appropriate, cash secured to the reasonable satisfaction of JLS), in the case of clause (i) below, the Debtor shall not seek, and in the case of clauses (i) and (ii) below, it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use Collateral (including, without limitation, Cash Collateral) if the Debtor seeks, or if there is

entered, (i) any modification of this ~~Interim~~Final Order without the prior written consent of JLS, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence by JLS, or (ii) an order converting or dismissing this Case.

(2)     If any or all of the provisions of this ~~Interim~~Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall, to the extent provided in section 364(e) of the Bankruptcy Code, not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the New DIP Liens.   Notwithstanding any such reversal, stay, modification or vacatur, any use of the Collateral (including, without limitation, the Cash Collateral), any DIP Obligations incurred by the Debtor to JLS prior to the effective date of such reversal, stay, modification or vacatur shall, to the extent provided in section 364(e) of the Bankruptcy Code, be governed in all respects by the original provisions of ~~this~~the Interim Order, and JLS shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this ~~Interim~~Final Order and the DIP Financing Agreement (with respect to all DIP Obligations) and uses of the Collateral (including, without limitation, the Cash Collateral).

(3)     Except as expressly provided in this ~~Interim~~Final Order or in the DIP Financing Agreement, the New DIP Liens, and all other rights and remedies of JLS granted by ~~this Interim Order~~such Orders and the DIP Financing Agreement shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting this Case to a case under chapter 7 of the Bankruptcy Code, dismissing this Case, or (ii) the entry of an order confirming a plan of reorganization in this Case and,

pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this ~~Interim~~Final Order and the DIP Financing Agreement shall continue in this Case or in any superseding chapter 7 case or other case under the Bankruptcy Code and/or following dismissal of this or any subsequent case, and the New DIP Liens, the DIP Obligations, and all other rights and remedies of JLS granted by this ~~Interim~~Final Order and the DIP Financing Agreement shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash.

(o)    **Payments Free and Clear**.  Any and all payments or proceeds remitted to JLS pursuant to the provisions of this ~~Interim~~Final Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

(p)    **Limitation of Liability**.  In determining to make any loan under the DIP Financing Agreement, permitting the use of Collateral (including Cash Collateral), or in exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~Final Order or the DIP Financing Agreement, JLS shall, subject to and effective upon entry of ~~the~~this Final Order, not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this ~~Interim~~Final Order or in the DIP Financing Agreement shall in any way be construed or interpreted to impose or allow the imposition upon JLS any

liability for any claims arising from the pre-petition or post-petition activities of the Debtor.

(q)    **Right to Seek Discovery**.  Notwithstanding anything herein to the contrary, the rights of creditors, other parties in interest and the Debtor to seek, oppose or limit discovery relating to (i) any attempt by the Debtor to seek approval of a bid for its assets, either in a 363 sale or pursuant to a chapter 11 plan, or (ii) any reports or summaries relating to the Debtor's efforts to market its assets currently being provided to JLS and the Committee are hereby preserved.

12.    Nothing in this Final Order shall affect or modify in any respect the Interim Order.  Pursuant any interim orders previously entered pursuant to 11 U.S.C. Section 105, 361, 362, 363, 364, 503(b) and 507(a), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 4001-2 of the Local Rules of Practice for the United States Bankruptcy Court, District of Utah (I) Authorizing the Debtor (A) to Obtain Post-Petition Secured DIP Financing and (B) to Use Cash Collateral Pursuant to 11 U.S.C. Section 363 and Providing For Adequate Protection; (II) Granting Liens and Providing for Superpriority Administrative Expense Status; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief dated November 6, 2018 [Docket No. 80].

-- END OF ORDER –

## <u>DESIGNATION OF PARTIES TO BE SERVED</u>

Service of the foregoing **SECOND INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364, 503(b) AND 507(a), RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 4001-2 OF THE LOCAL RULES OF PRACTICE FOR THE UNITED STATES BANKRUPTCY COURT, DISTRICT OF UTAH (I) AUTHORIZING THE DEBTOR (A) TO OBTAIN POST-PETITION SECURED DIP FINANCING AND (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE PROTECTION; (II) GRANTING LIENS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF** shall be served to the parties and in the manner designated below:

**<u>EXHIBIT A</u>**

(Budget)